JOSEPH GRAVEL, Appellant, v. H. H. CLOUGH et al., Appellees.

1. **Conversion of Chattels by Mortgagee: DAMAGES.** The measure of damages recoverable for the conversion of mortgaged chattels by a wrongful sale thereof by the mortgagee is the difference between the price for which the property sold and the market value thereof on the date of such sale.

2.  **Costs.**  Where issue is taken upon the demands of the plaintiff in a cause, and he recovers in part, and the defendant is partially successful upon a counterclaim therein, the costs of the suit should be equitably apportioned between them.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

THURSDAY, OCTOBER 23, 1890.

ON the eighth day of July, 1886, the plaintiff purchased of the defendant one hundred and forty-two head of cattle, and gave therefor his two notes for twenty-nine hundred and nineteen dollars and sixty-five cents each, due respectively, February 8 and July 8, 1887; and on the ninth of December he executed to the defendant a mortgage on said cattle to secure the payment of said notes. On the eighth of December, 1886, the plaintiff made to the defendant his note for twelve hundred dollars, and, on the day following, the plaintiff made two other chattel mortgages to secure the twelve-hundred-dollar note, one being on one hundred and seventy-five tons of hay in Monona county, and the other on certain stock, farm machinery, etc., in Woodbury county; and on the fourteenth day of December, 1886, he made another mortgage on certain horses, the same being junior to a mortgage to Chapin Bros. These mortgages were known in the record as follows: That on the cattle as "Exhibit A;" those on the hay and on the corn, stock, etc., in Woodbury county as "Exhibit B;" and that on the horses as "Exhibit C." Exhibits B and C, besides securing the twelve-hundred-dollar note by their terms, are additional security for the two notes given for the cattle. The consideration of the twelve-hundred-dollar note is somewhat in dispute, but it is undisputed that a part of the consideration therefor was an agreement by the defendant to furnish corn and feed for the cattle before mentioned. No part of the consideration for the twelve-hundred-dollar note having been paid, it was, by agreement, on the twentieth of December, 1886, surrendered to plaintiff.

Each of the mortgages contained the usual clause that,. "whenever the mortgagee shall deem himself unsafe, then, and in that case, it shall be lawful for such mortgagee * * * to take immediate possession of said cattle, * * * and to sell the same at public auction," etc. Under the provisions of the mortgage, and on the fifth day of January, 1887, the defendant firm took possession of the cattle, and on the twenty-fifth of January, 1887, sold them at public auction for five thousand and forty-one dollars, and after deducting four hundred and sixty-four dollars as the costs of sale, feeding, etc., indorsed the balance, forty-five hundred and fifty-seven dollars, on the notes given for the cattle, leaving a balance of said notes still unpaid. Thereafter, on the seventh of March, 1887, by virtue of Exhibits B and C, the defendant took possession of a part of the property described therein, and sold the same at public auction, and realized therefrom, exclusive of expenses, four hundred and two dollars and four cents, which was applied on the notes.

The plaintiff avers that, when the note for twelve hundred dollars was given, it was verbally agreed that defendant should furnish corn for plaintiff in such quantities as he should need to feed the cattle till May or June, 1887, for the market price at the time of delivery,. and also furnish a carload of hogs or more to run with the cattle at the market price thereof, which it failed to do. Plaintiff also avers that, when Exhibit C was made,. the only consideration therefor was the agreement by the defendant to furnish the corn and hogs, and to extend the time of payment of the first note given for the cattle, and that, when the twelve-hundred-dollar note was tendered back by defendant and accepted, it was. with the understanding that the two mortgages given to secure it should be canceled of record, which defendant failed to do.

The plaintiff alleges that the seizure and sale of the cattle before the maturity of either of the notes secured thereby, and of the property described in Exhibits B and C, after the surrender of the twelve-hundred-dollar

note, was wrongful; and this action is to recover dama-
ges for such wrongful acts, and the conversion of the
property.    Barring the facts stated, the defendant puts
in issue the allegations of the plaintiff as to his right to
recover.    The district court found that the sale of cattle,
January 25, and of other property, March 22, 1887, was
premature and wrongful, and adjudged the plaintiff
entitled to a credit on the notes for the market value of
the cattle on the date of the sale, fixing the value at
five thousand and forty-seven dollars and fifty-one cents,
and also for the value of the property sold in Exhibit C
of the date of such sale, fixing the value at five hun-
dred dollars, and found a balance due on the notes for
seven hundred and eight dollars and ninety-three cents,
for which, on defendant's counterclaim, it gave judg-
ment.    From such judgment the plaintiff appeals.

J. P. Blood, for appellant.

J. H. & C. M. Swan and W. D. Buckley, for appel-
lee.

GRANGER, J.—I.    Upon the issues of fact presented
as to an agreement to furnish corn and hogs, and a fail-

1. CONVERSION    ure so to do, and to cancel the mortgages
of chattels by    Exhibits B and C with the surrender of
mortgagee:
damages.          the note for twelve hundred dollars, the
district court found with the defendant, and we think
rightly ; for an examination of the testimony leaves lit-
tle room for doubt as to such facts, and we will not pro-
duce or discuss the evidence leading to the conclusion.

The debatable question, if any in the case, is the
measure of damages.    The district court held the sales
wrongful, and adopted, as the rule of damage, the value'
of the ·property at the time of the sale.    Appellant
urges that the measure of damage is the highest market
value between the time of the conversion and suit
brought, and the claim is not without strong support on
authority, if we say with appellant that the rule appli-
cable to sales of personal property, where the price is

paid, and there is a failure to deliver, is applicable to this case. The rule of damage in cases of sales of property, and a failure to deliver, is differently applied in the United States. We might be disposed to consider the importance and correctness of the different rules but for the fact that this court has held to a rule in a case, which, on principle, we think, should govern in this. In *Brown v. Allen*, 35 Iowa, 306, the question arose as to the measure of damage for wrongfully entering a warehouse and removing corn. It is true, the claim there was not like appellant's claim here, but it involved the right of plaintiff to obtain more than the market value at the time of the conversion. The plaintiff in that case offered to show, as affecting his damage, that he had an outstanding contract for the corn in excess of the market value, which offer was refused, and this court held to the rule of the market value at the time of conversion. That is certainly a strong case, in its facts, for an extension of the rule, but this court said: "The market value is the measure of damage." There is certainly no reason for holding to such a rule in that case, and a different one in this. The taking of the property into possession in this case was not wrongful. The wrongful act consisted in selling before the maturity of the notes. At least, the district court held such selling wrongful, and as appellee does not, in argument on appeal, question the correctness of the holding, but indicates a willingness that the cause should be disposed of on that theory, we treat it as a fact, and consider the case accordingly. Adopting, as applicable to the facts of this case, the rule in that, the market value of the property at the time of sale is a correct one, and the judgment to that extent must be approved.

II. The district court taxed the costs to plaintiff. Defendant, by way of counterclaim in the action, sought

2. COSTS.

judgment on its notes for the unpaid balance, and obtained it. The judgment, however, is for less than appeared to be due thereon after applying the proceeds of the sale by some five hundred and sixty-eight dollars and forty-seven cents, and

in legal contemplation such reduction is equivalent to a recovery of that amount, and it does not appear from the record that plaintiff could secure such right, except by suit, as the right is clearly put in issue by defendant. It is true that part of the controversy involving cost, is upon issues determined favorable to the defendant. There should be an apportionment of the costs in the district court, and, as the record before us is not such as to enable us to properly determine the amount, it will be left to the discretion of that court. · The costs of this appeal will be paid by the plaintiff. With the exception as , to costs, the judgment of the district court is AFFIRMED.